1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

8

9   Thomas Short,                          No. CV-22-00444-PHX-DJH

10              Plaintiff,                  **ORDER**

11  v.

12  David Berger, et al.,

13              Defendants.

14

15                          **INTRODUCTION**

16          In August 2021, after consulting with military leadership and medical experts, the

17  Secretary of Defense issued a memorandum concluding that the mandatory vaccination of

18  military personnel against COVID-19 "is necessary to protect the Force and defend the

19  American People." (Doc. 14-2 at 2.)  The August 2021 memorandum further provided that

20  the mandatory vaccination policy would be subject to certain "exemptions" and authorized

21  the "Military Departments [to] promulgate appropriate guidance to carry out the

22  requirements set forth above."  (*Id.*)  Pursuant to this directive, the Commandant of the

23  United States Marine Corps ("USMC"), General David Berger, issued an order in

24  September 2021 that addressed how Marines may seek medical and religious exemptions

25  from the vaccine requirement.  (Doc. 14-7.)

26          To date, the USMC has received over 3,600 requests for a religious exemption from

27  the vaccine requirement but has approved only seven of those requests.  (Doc. 14-8 ¶ 13.)[1]

28  ────────────────
    [1]     Although the cited document states that six religious exemption requests have been
    granted, the parties agreed during the preliminary injunction hearing that the number has

1    It appears that, in all seven cases, the applicant was already in the process of separating
2    from the Marines at the time the request was granted.  In contrast, the USMC has approved
3    over 900 medical exemptions, including at least 20 permanent medical exemptions.  (*Id.*
4    ¶ 12.)[2]

5        Plaintiff Thomas Short ("Major Short") is a major in the USMC who applied
6    unsuccessfully for a religious exemption.  In this action, Major Short argues that the denial
7    of his exemption request was improper for several reasons, including because it violated
8    the Religious Freedom Restoration Act ("RFRA").  Major Short has now moved for a
9    preliminary injunction on his RFRA claim.  (Doc. 2.)

10       In addressing Major Short's motion, the Court[3] does not write on a blank slate.  In
11   recent months, several district courts outside the Ninth Circuit have granted injunctive
12   relief in favor of service members pursuing RFRA-based challenges to military vaccine
13   requirements.  *U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443 (N.D. Tex. 2022); *Navy
14   SEAL 1 v. Austin*, 2022 WL 534459 (M.D. Fla. 2022); *Air Force Officer v. Austin*, 2022
15   WL 468799 (M.D. Ga. 2022); *Poffenbarger v. Kendall*, 2022 WL 594810 (S.D. Ohio
16   2022); *Doster v. Kendall*, 2022 WL 982299 (S.D. Ohio 2022).  The Fifth Circuit initially
17   rejected the government's request for a partial stay pending appeal in one of those cases.
18   *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022).  However, the Supreme Court
19   subsequently granted the government's partial stay request, holding that the district court's
20   grant of injunctive relief was stayed "insofar as it precludes the Navy from considering [the
21   challengers'] vaccination status in making deployment, assignment, and other operational
22   decisions." *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1301 (2022).  In a concurrence,
23   Justice Kavanaugh explained that he viewed a stay as necessary for the "simple overarching

24   _____

25   now increased to seven.

26   [2]      The cited document only refers to the number of permanent medical exemptions.
     The overall number of medical exemptions (temporary and permanent) was established via
27   testimony during the preliminary injunction hearing.

28   [3]      Because the assigned judge in this action, Judge Humetewa, was temporarily
     unavailable on the date of the preliminary injunction hearing, the undersigned judge was
     randomly drawn to address the motion in Judge Humetewa's absence.  (Doc. 19.)

reason" that "[u]nder Article II of the Constitution, the President of the United States, not any federal judge, is the Commander in Chief of the Armed Forces" and emphasized that "the Navy has an extraordinarily compelling interest in maintaining strategic and operational control over the assignment and deployment of all Special Warfare personnel— including control over decisions about military readiness.  And no less restrictive means would satisfy that interest in this context."  *Id.* at 1302 (Kavanaugh, J., concurring).

In the Ninth Circuit, service members' challenges to the vaccine mandate have met with less success.  In February 2022, the United States District Court for the Eastern District of California denied an Air Force reservist's RFRA-and First Amendment-based request for injunctive relief.  (Doc. 14-14.)  Afterward, the Ninth Circuit denied the challenger's request for an injunction pending appeal.  *Dunn v. Austin*, 2022 WL 1136043 (9th Cir. 2022).  Earlier this week, the Supreme Court also denied the challenger's request for emergency relief.  *Dunn v. Austin*, __ S. Ct. __, 2022 WL 1133402 (2022).  Meanwhile, in March 2022, the United States District Court for the Central District of California denied a Marine's RFRA-and First Amendment-based request for injunctive relief for several reasons, including a lack of justiciability, no likelihood of success on the merits, and the absence of irreparable harm in the absence of injunctive relief.  *Short v. Berger*, 2022 WL 1051852 (C.D. Cal. 2022).

The Court has carefully reviewed all of the above-cited cases, as well as the parties' briefs and evidentiary submissions in this case, and concludes that Major Short is not entitled to a preliminary injunction.  This outcome is dictated by Major Short's failure to establish that he will suffer irreparable harm if forced to wait until the end of this case to obtain relief pursuant to his RFRA claim.  Most of Major Short's asserted injuries could be redressed at a later date through back pay and reinstatement and it is unlikely that Major Short's other asserted injury—the coercion inherent in being forced to choose between following his religious beliefs and a military order—qualifies as an irreparable injury under Ninth Circuit law.  Finally, although some of the other preliminary injunction factors (such as the likelihood of success on the merits, which incorporates whether Major Short's RFRA

1  claim is justiciable) present a somehow closer call, Major Short still has not made the sort
2  of clear showing as to those factors that is necessary to justify the extraordinary remedy of
3  a preliminary injunction.

**BACKGROUND**

4
5  The facts set forth below are derived from the materials attached to the parties'
6  motion papers and the evidence admitted during the preliminary injunction hearing on
7  April 20, 2022.[4]  Unless indicated otherwise below, all facts are undisputed.

8  I.  Major Short's Background And Current Role

9  Major Short is currently serving as an active-duty staff judge advocate at Marine
10  Corps Air Station Yuma ("MCAS Yuma") in Yuma, Arizona.  (Doc. 2-2 ¶ 2.)  Over the
11  course of his career in the USMC, Major Short has been deployed to Afghanistan, Central
12  America, South America, and Japan.  (*Id.* ¶¶ 3-4.)  In his current role, Major Short is the
13  legal advisor to the commanding officer at MCAS Yuma, Colonel Charles Dudik, to
14  Colonel Dudik's staff, to the "Headquarters and Headquarters Squadron" Yuma
15  Commanding Officer, and to the Marine Operational Test and Evaluation Squadron 1
16  Commanding Officer.  (Doc. 14-11 ¶¶ 1-3.)

17  Since May 2021, Major Short has been authorized to engage in telework.  (Doc. 2-
18  2 ¶ 5.)  However, Short has "not teleworked a single day by personal preference" since
19  receiving this authorization.  (*Id.*)

20  One of the disputed issues in this case is the extent to which Major Short's job
21  responsibilities require him to perform in-person tasks while in close proximity to other
22  Marines.  On this topic, Colonel Dudik's declaration suggests that Major Short must
23  frequently engage in such close, in-person interactions.  For example, Colonel Dudik
24  avows that "[w]hile some of [Major Short's] duties may be performed remotely, extended
25  periods of telework are impractical and unsustainable for such a critical role," in part
26  because staff judge advocates "must be available to meet in-person when sensitive legal

27
28  ─────────────────
[4]      The Court did not rely on defense exhibits 41, 44, 45, 56 and 57 for purposes of this
order, so there is no need to resolve Major Short's objection to those exhibits.

issues arise" and are "often involved in impromptu meetings and sensitive conversations involving military justice," many of which are not "best handled via electronic mail, phone calls, or even videoconferences."  (Doc. 14-11 ¶ 5.)  Colonel Dudik also avows that, although Major Short is currently assigned to a non-deployable unit at MCAS Yuma, he may "be required to deploy at a moment's notice as a result of emergent geopolitical developments, either domestically or abroad."  (*Id.* ¶ 8.)  According to Colonel Dudik, because Major Short "has both prior experience and training in operational law," this "makes it more likely that he would be eligible for such an operational assignment."  (*Id.*)  Colonel Dudik also notes that Major Short is one of the members of the MCAS Yuma staff "who is designated as mission essential emergency personnel.  This means that he is a required member of our emergency operations center (EOC), which is activated during emergencies such as border crises, natural disasters, domestic terrorist attacks and other major incidents.  The EOC is physically located on board MCAS Yuma and those who participate must be vaccinated and may not do so remotely because it is a small room with dozens of personnel in close quarters."  (*Id.* ¶ 6.)  Finally, Colonel Dudik notes that Major Short "has a security clearance, and is required to be able to access classified systems, which can only be done in person."  (*Id.*)  Given this backdrop, Colonel Dudik avows that "Major Short is my principal legal advisor and serves a prominent position among the leadership at MCAS Yuma; as such, it is important that, like other members of the leadership team, he is visible and physically accessible to other Marines."  (*Id.*)

During the preliminary injunction hearing, Major Short testified that some of the statements in Colonel Dudik's declaration on these topics are either inaccurate or exaggerated.  In a nutshell, although Major Short acknowledges that he must perform certain tasks (such as physical training exercises) in close proximity to other Marines, he contends that the great majority of his work can be done remotely.  Major Short also testified that, notwithstanding his vaccination status, he has been allowed to continue performing in-person tasks in close proximity to other Marines since submitting his exemption request, including a recent visit to the EOS and a recent invitation to an indoor

1    social event at MCAS Yuma.  As the finder of fact for purposes of the preliminary

2    injunction request, the Court credits Major Short's testimony on these topics—because

3    Defendants chose not to call any witnesses, Major Short's testimony was largely

4    uncontradicted.

5    II.    <u>Major Short's Request For A Religious Exemption</u>

6              On September 1, 2021, Commandant Berger issued an order (MARADMIN 462/21)

7    that addressed how Marines may seek medical and religious exemptions from the COVID-

8    19 vaccine requirement.  (Doc. 14-7.)

9              On September 17, 2021, Major Short submitted a request for religious exemption.

10   (Doc. 2-2 at 19-20; Doc. 14-11 ¶ 10.)  In his request, Major Short stated that "I have

11   sincerely held and religiously inspired objections of conscience to using this drug on two

12   bases: (1) Use of vaccinations or medications on tissues or cell lines derived from electively

13   aborted fetuses is contrary and offensive to my religious beliefs and practice, as material

14   cooperation in evil. . . .  (2) Use of synthetic messenger ribonucleic acid (mRNA) in non-

15   therapeutic situations is contrary and offensive to my religious beliefs and practice." (Doc.

16   2-2 at 19-20.)

17             On October 20, 2021, Major Short's exemption request was denied.  (Doc. 2-2 at

18   27.)  The denial letter, which was less than a page long, stated that the reviewing official

19   had "carefully considered" Major Short's request, as well as the materials attached to the

20   request, Major Short's "right to observe the tenets of [his] sincerely held religious beliefs,"

21   "the government's compelling interests in mission accomplishment, including military

22   readiness and safety of the Total Force," and "whether an exception to the vaccination

23   requirement is the least restrictive means of furthering the government's compelling

24   interest," and concluded that "[i]mmunizations are a critical component of individual and

25   unit readiness" and "there is no less-restrictive way of accommodating your request that

26   ensures military readiness and the preservation of the health of the force."  (*Id.*)

27             On November 4, 2021, Major Short appealed the denial.  (*Id.* at 29-31.)  Among

28   other things, Short stated in his appeal letter that he has antibodies that confer natural

immunity against COVID-19 and that existing vaccines do not prevent the transmission of the virus.  (*Id.*)

On March 14, 2022, Major Short's appeal was denied by the Assistant Commandant of the Marine Corps, General Eric M. Smith.  (*Id.* at 105-08.)  General Smith is a four-star general.  (Hearing Exhibit 16.)  This denial letter, which was much longer and more detailed than the previous one, was divided into the following parts:

▪ First, the letter summarized the two objections that Major Short provided in his initial exemption request (*i.e.,* use of fetal cell lines in the development of the vaccine and general objection to the use of mRNA in non-therapeutic situations) and the additional two objections that Major Short provided in his appeal (*i.e.,* natural immunity and ineffectiveness of current vaccines).  (Doc. 2-2 at 105-06.)

▪ Second, the letter identified the materials and considerations that General Smith had weighed when resolving Major Short's appeal.  (*Id.* at 106.)  Specifically, the letter explained that General Smith had considered Major Short's submissions (including attachments); Major Short's other military records; Major Short's "right to the free exercise of [his] religion"; the military's "compelling interest in mission accomplishment at the individual, unit, and organizational levels," including "(1) military readiness, (2) unit cohesion, (3) good order and discipline, and (4) the health and safety of the force"; and whether the denial of Major Short's exemption request "constitutes the least restrictive means of furthering the government's compelling interests."  (*Id.*)

▪ Third, the letter stated that General Smith had determined that the COVID-19 vaccination requirement did not substantially burden Major Short's sincerely held religious beliefs because fetal cell lines were not used in the development or testing of one of the available vaccines (Pfizer), none of the mRNA-based vaccines interact with human DNA, and mRNA was not used in one of the available vaccines (Johnson & Johnson).  (*Id.*)

▪ Fourth, the letter stated in the alternative that even assuming the vaccine requirement constituted a substantial burden on Major Short's sincerely held religious beliefs, enforcement of the requirement was narrowly tailored to advance a compelling

interest.  (*Id.* at 106-07.)  On that issue, the letter began by identifying the following six reasons why the USMC has a compelling interest in requiring Marines to be vaccinated against COVID-19: (1) "[t]he COVID-19 vaccine is the more effective and readily available tool the Marine Corps has to keep service members healthy and safe"; (2) "[s]ervice members who are fully vaccinated have a significantly lower risk of hospitalization, severe disease, and death"; (3) "[t]he Marine Corps has seen increasingly convincing data that service members who remain unvaccinated are more likely to experience a wide range of new, returning, or ongoing health problems known as 'long COVID' after being infected with COVID-19 as opposed to those who are fully vaccinated"; (4) "emerging variants, such as the Omicron variant, which is highly transmissible, pose additional concerns"; (5) "[p]ersonnel who have fallen ill due to a failure to be vaccinated against COVID-19 undermine a unit's effective functioning and negatively impact their unit's ability to accomplish the mission"; and (6) "personnel who are unvaccinated do not just put themselves at risk, they also risk the health and medical readiness of other persons within their unit, which in turn decreases the military readiness of the unit and the Marine Corps as a whole," because "[f]or a unit to function effectively . . . all personnel must be able to perform their individually assigned duties, which ensures military readiness."  (*Id.*)  The letter then provided the following four reasons why, "particularly in [Major Short's] case," an exemption could not be granted: (1) "you work primarily indoors and must periodically meet with others in a confidential setting to discuss your legal advice"; (2) "you can perform some but not all of your assigned duties remotely"; (3) "you are required to conduct individual training events and participate in readiness requirements throughout the year that cannot be completed remotely and that put you in close proximity to your fellow service members"; and (4) "even if you are not in a deployable unit now, you must remain world-wide deployable, which is not possible if you are unvaccinated against COVID-19."  (*Id.*)

▪ Fifth, the letter addressed Major Short's claim of natural immunity, concluding that the claim did not support an exemption because (1) "personnel who are unvaccinated

continue to put themselves at risk and to pose a risk to the health, safety, and medical readiness of others within their unit"; (2) "the CDC continues to recommend that those who have been infected with COVID-19 be vaccinated"; and (3) although measures such as masking, social distancing, and teleworking "have been shown to help slow the spread of the virus," they "are simply not as effective as vaccination particularly against the Omicron and other variants," "are completely ineffective at preventing severe illness, hospitalization, and death," and "are often incompatible with the demands of military life, where Marines and Sailors must live, work, realistically train, and, if necessary, fight in close quarters." (*Id.* at 107.)

On March 16, 2022, Colonel Dudik issued an order requiring Major Short to receive the first dose of the COVID-19 vaccine by March 21, 2022. (Doc. 2-2 at 110; Doc. 14-11 ¶ 10.)

III.   Next Steps Absent Judicial Intervention

Major Short has not, to date, been formally disciplined by the USMC for his refusal to comply with the vaccine mandate or for his refusal to comply with Colonel Dudik's order. (Doc. 14-11 ¶ 15 ["Short has not been subject to any form of discipline or disparate treatment, nor any form of maltreatment, either as a result of his refusal to take the vaccine or as a result of this lawsuit."].) Major Short contends that the next steps in the process will be for the USMC to "place him in the Officer Disciplinary Notebook (ODN) and commence separation proceeding[s]"; that "[p]lacement on the ODN will make him ineligible for Permanent Change of Station orders, ineligible for promotion boards, ineligible for Professional Military Education boards, ineligible for career level schools, ineligible for deployments, and ineligible for all other normal career progressions"; and that upon separation, "[h]is service will likely be characterized as 'General (under honorable conditions),' rather than 'Honorable.'" (Doc. 2-1 at 6.)

Defendants contend that Major Short's assertions on these points are inaccurate in part and incomplete in part. As for the ODN, Defendants contend that it is merely a "database used to track officer misconduct and substandard performance in the Marine

Corps," that it is "not itself a disciplinary measure," and that "ODN entries are not included in an officer's personnel file." (Doc. 14 at 16 n.8.) In support of this position, Defendants proffer the relevant paragraphs of the declaration of Colonel Dudik. (Doc. 14-11 ¶ 11 ["It bears emphasis that documenting alleged misconduct in the ODN—which has not yet occurred with respect to Major Short's vaccine refusal—is not a final adverse action nor is it punitive in nature. An ODN entry merely creates a temporary administrative flag in the officer's record. Documenting allegations of misconduct—such as failure to obey a lawful order—in the ODN does not result in formal discipline or administrative separation until the allegations of misconduct are fully and finally investigated and adjudicated."].) To the extent the parties' dispute over the ODN constitutes a dispute of fact, the Court accepts Defendants' description of the ODN.

Meanwhile, Defendants do not dispute that Major Short will likely be placed in separation proceedings based on his failure to comply with the vaccine mandate but argue that, upon the initiation of such proceedings, Major Short will "have the additional opportunity to consult with counsel and present any arguments—including his challenge to the lawfulness of the vaccination requirement—that he wishe[s] to have considered by the separation authority, who may determine that separation is not warranted. . . . And given Plaintiff's rank and time in service, he is entitled to review by a Board of Inquiry and the Assistant Secretary of the Navy, a process that would likely not be completed for at least six or twelve months." (Doc. 14 at 7-8.) In support of these assertions, Defendants proffer the relevant paragraphs of the declarations of Colonel Dudik (Doc. 14-11 ¶¶ 12-14) and Lieutenant General David Furness (Doc. 14-8 ¶¶ 31-34). Major Short, in turn, presented evidence during the preliminary injunction hearing that even though it might be theoretically possible for him to seek further relief during the remaining stages of the separation process, there is no actual chance of relief because, *inter alia*, the official who denied his appeal is a four-star general, that official outranks the officials who would review any exemption request made as part of the separation process, and those officials would not effectively countermand the order of a superior officer.

IV.   This Action

On March 21, 2022—the deadline established in Colonel Dudik's order for receiving the first dose of the COVID-19 vaccine—Major Short filed his action.  (Doc. 1.)  At the same time, Major Short filed a motion for a temporary restraining order ("TRO") and preliminary injunction.  (Doc. 2.)

On March 23, 2022, Judge Humetewa denied Major Short's request for a TRO because the USMC had agreed not to initiate any disciplinary or other adverse proceeding against Major Short until April 15, 2022, the preliminary injunction hearing could be held before that date, and thus Major Short would not suffer any irreparable harm by delaying any decision on injunctive relief until the preliminary injunction hearing.  (Doc. 13.)  Additionally, after the preliminary injunction hearing was rescheduled for April 20, 2022 due to a conflict (Doc. 18), Defendants confirmed that they would postpone pursuing any adverse action against Major Short until at least April 22, 2022.  (Doc. 21.)

On April 20, 2022, the preliminary injunction hearing took place.  (Doc. 24.)  The only witness to testify was Major Short.  (*Id.*)

## DISCUSSION

I.   Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Such a "drastic remedy . . . should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation omitted).

To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief is denied, (3) that the balance of equities weighs in the plaintiff's favor, and (4) that the public interest favors injunctive relief.  *Winter*, 555 U.S. at 20.  The Ninth Circuit has also stated that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

1   Regardless of which standard applies, the movant "carries the burden of proof on each
2   element of [the] test." *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027
3   (E.D. Cal. 2000).  Also, "[w]hen the government is a party, the[] last two factors merge."
4   *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

5   II.   <u>Irreparable Harm</u>

6        The Court will begin by addressing the second element of the preliminary injunction
7   test—whether Major Short has established a likelihood of irreparable harm in the absence
8   of a preliminary injunction—because it is dispositive.  *Caribbean Marine Servs. Co. v.*
9   *Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[A] plaintiff must demonstrate immediate
10  threatened injury as a prerequisite to preliminary injunctive relief.") (emphasis omitted).

11       As noted, Major Short has not yet faced any discipline due to his refusal to comply
12  with Colonel Dudik's order to be vaccinated.  If Major Short persists in his refusal to
13  comply, the next step will be for Major Short's name to be placed on the ODN.  This may
14  take place as soon as today, April 24, 2022.  But as discussed above, such placement does
15  not, in and of itself, constitute discipline or punishment.  Nor will Major Short be demoted
16  upon his placement on the ODN.[5]

17       Once Major Short's name is placed on the ODN, the next step will be for the USMC
18  to initiate separation proceedings against him.  The evidence presented by the parties
19  suggests that such proceedings will take at least 6-12 months to complete and that Major
20  Short will have an opportunity (however futile) to renew his exemption request during the
21  proceedings.  Finally, if Major Short is ordered separated at the conclusion of the
22  proceedings, he will be removed from the USMC and likely receive something less than
23  an honorable discharge.

24       In his motion for preliminary injunction, Major Short conspicuously does not assert
25  that separation, loss of training and promotion opportunities, loss of pay, and/or a less-
26  than-honorable discharge constitute irreparable injuries.  (Doc. 2-1 at 12.)  Instead, the sole

27

28  ─────────────
    [5]   During the preliminary injunction hearing, Defendants asserted without
    contradiction that, because Major Short is an officer, he cannot be demoted.

theory of irreparable harm articulated in Major Short's motion is that "being forced to choose between receiving the injection contrary to his religious beliefs, or defying an order, is itself a denial of free exercise, and directly causes irreparable harm." (*Id.*)[6] That theory of irreparable harm is addressed below, but for sake of completeness, the tangible employment-related harms that Major Short may suffer as a result of being placed on the ODN, being placed in separation proceedings, being separated, and receiving a less-than-honorable discharge do not qualify as irreparable under Ninth Circuit law because they can be remedied through retrospective relief. *Hartikka v. United States*, 754 F.2d 1516, 1517 (9th Cir. 1985) (reversing preliminary injunction, where "a captain in the United States Air Force" raised a challenge to an ongoing discharge proceeding and argued he would suffer "irreparable injury . . . based on assertions of loss of income, loss of retirement and relocation pay, and damage to his reputation resulting from the stigma attaching to a less than honorable discharge," because "these alleged injuries are insufficient . . . to justify injunctive relief").[7]

As for Major Short's coercion theory, the Court acknowledges that, in many of the recent military vaccine challenges arising outside the Ninth Circuit, courts have suggested

---

[6]     Similarly, in his reply, Major Short asserted that the "most significant burden on [his] religious beliefs was created by the order to violate them, placing him in the position of choosing whether to 'irreparably receive the injection or irreparably defy an order,'" and that "[a]ny subsequent processes available to mitigate the penalties Defendants will impose for his failure to comply with the order to violate his religious beliefs cannot undo that ongoing deprivation." (Doc. 17 at 7.)  And again, in response to questioning during the preliminary injunction hearing, Major Short's counsel acknowledged that she was "not sure" the penalties themselves could qualify as irreparable harm before emphasizing that the focus of Major Short's claim of irreparable harm was "the coercion."

[7]     *See also Church v. Biden*, 2021 WL 5179215, *14-15 (D.D.C. 2021) ("The Federal Employee Plaintiffs allege that because of their attempts to exercise their religious beliefs, they are now under threat of reprimand, loss of benefits, loss of promotional opportunity, termination of employment, and other life-altering disciplinary measures.  This theory of employment-based harm comes up short.  In *Sampson v. Murray*, the Supreme Court held that loss of employment is not irreparable harm except in a genuinely extraordinary situation.  Subsequent courts have duly applied the rule in *Sampson* to claims of employment-based harm, emphasizing that courts possess sufficient equitable authority to remedy the loss in employment through, for example, back pay and time in service credit. Accordingly, cases are legion holding that loss of employment does not constitute irreparable injury.  Alternative forms of adverse employment action, such as the loss of benefits or promotional opportunities, are also generally insufficient to constitute irreparable harm.") (cleaned up).

that a service member suffers an irreparable injury the moment he is forced to choose between following his religious beliefs and following an order to be vaccinated. *See, e.g., U.S. Navy SEALs 1-26,* 2022 WL 34443 at *13 ("The crisis of conscience imposed by the mandate is itself an irreparable harm."); *Poffenbarger*, 2022 WL 594810 at *19 (same); *Air Force Officer*, 2022 WL 468799 at *6 ("Plaintiff's claim that she has been 'forced to choose between her sincerely held religious beliefs and her livelihood' undoubtedly checks the box for an allegation of a deprivation of a constitutional right or violation of an applicable federal statute."); *Navy SEAL 1 v. Biden,* 2021 WL 5448970, *14 (M.D. Fla. 2021) ("[T]he first moment an objecting service member must act contrary to a religious belief is when the exemption is finally denied and the member must choose to immediately receive the injection or immediately defy a direct order.").  But however persuasive those cases might otherwise be, this Court must follow Ninth Circuit law and the Ninth Circuit has not adopted—and, indeed, appears to have rejected—this theory of irreparable harm.

The key Ninth Circuit case on this topic is *Doe v. San Diego Unified School District*, 19 F.4th 1173 (9th Cir. 2021).  There, a school district adopted a COVID-19 vaccination mandate that was applicable to all students who were at least 16 years old.  *Id.* at 1175-76.  Under the policy, unvaccinated students were not "permitted to participate . . . in on-site education or extracurricular activities."  *Id.* at 1176.  Notably, the policy included a medical exemption but not a religious exemption.  *Id.*  The plaintiff in *Doe*, a student who held "a religious belief that prohibits her from taking any of the available vaccines," argued that the policy violated the Free Exercise Clause of the First Amendment because it treated "comparable secular activity more favorably than religious exercise."  *Id.*  After the district court denied the plaintiff's request for injunctive relief, she sought an injunction pending appeal from the Ninth Circuit.  The Ninth Circuit denied this request for several reasons, including that the plaintiff "may not have demonstrated a likelihood of irreparable injury" because her case was "meaningfully distinct from the recent cases involving COVID-19 restrictions on worship in churches and private homes.  In those cases, the plaintiffs were literally prevented from exercising their religion in group settings.  Here, in contrast, Jill

Doe may exercise her religion by declining to receive the vaccination." *Id.* at 1181.  The court went on to explain that the plaintiff was required to establish that the benefits *actually being withheld* from her based on her non-compliance with the vaccine mandate (*i.e.*, in-person school attendance and athletic participation) were causing her to suffer irreparable injury and concluded that her evidence was likely insufficient to show such an injury.  *Id.*

In light of *Doe*, Major Short is unlikely to succeed on his theory that the coercion arising from a vaccine mandate is itself is an irreparable injury.  Because Major Short may continue to "exercise [his] religion by declining to receive the vaccination," *id.* at 1181, he has not suffered an irreparable injury under Ninth Circuit law.  Nor is *Doe* distinguishable, as Major Short's counsel suggested during the preliminary injunction hearing, because the coercion inherent in "being declared a criminal in the eyes of the military" is "qualitatively different" than the coercion at issue in *Doe*, which merely involved "remote learning and sports."  This is essentially a stigma argument and is thus foreclosed by *Hartikka*, which holds that "the stigma attaching to a less than honorable discharge . . . will not support a finding of irreparable injury, however severely [it] may affect a particular individual." 754 F.2d at 1518 (citation and internal quotation marks omitted).

III.   Likelihood Of Success On The Merits

Although Major Short's failure to establish a likelihood of irreparable harm in the absence of preliminary injunctive relief makes it unnecessary to address the other preliminary injunction factors, the Court will address some of them in an abundance of caution and in order to develop a complete record in the event of appeal.

The sole claim on which Major Short moved for preliminary injunctive relief is the RFRA claim in Count One of his complaint.  (Doc. 2 at 3 ["This Application is made on the grounds that Plaintiff is likely to succeed on the merits of his claims under the Religious Freedom Restoration Act that he will suffer irreparable harm absent immediate injunctive relief, that the balance of equities tips sharply in his favor, and that the relief sought is in the public interest."]; Doc. 2-1 at 8-12 [only addressing "his RFRA claim" when addressing the likelihood of success on the merits].)  Although Major Short also attempted to argue,

for the first time in his reply, that he is entitled to preliminary injunctive relief based on the First Amendment-based § 1983 claim in Count Two of his complaint (Doc. 17 at 11-13), that claim is not properly before the Court for the reasons stated in Defendants' sur-reply (Doc. 22).  Put simply, "[t]he district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Turning to the RFRA claim, the likelihood-of-success analysis is complicated by the fact that Defendants raise a justiciability challenge to the claim.  Whether the claim is justiciable is intertwined with whether Major Short has demonstrated a likelihood of success on the merits—without justiciability, there can be no success.  Thus, the Court will begin by addressing the issue of justiciability.

### A.    **Justiciability**

In his RFRA claim, Major Short seeks to challenge a military decision—specifically, the USMC's denial of his request for a religious exemption from the vaccine mandate.  The nature of Major Short's challenge raises justiciability concerns because, under Ninth Circuit law, "a person challenging a military decision generally must satisfy two threshold elements before a court can determine whether review of his claims is appropriate.  An internal military decision is unreviewable unless the plaintiff alleges (a) a violation of a recognized constitutional right, a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies.  If the plaintiff alleges both of these things, a court weighs four factors to determine whether judicial review of his claims is appropriate.  These factors include: (1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved."  *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002) (cleaned up).  This is known as the *Mindes* test.  *Id.*

### 1.    *Mindes*—Applicability

Major Short argues that *Mindes* should be deemed categorically inapplicable when one particular type of claim—a RFRA claim—is asserted against the military.  (Doc. 17 at

2 n.1, 6-7.)[8]   In support of this position, Major Short cites the Fifth Circuit's decision in *U.S. Navy Seals* and the decision in *Singh v. Carter*, 168 F. Supp. 3d 216 (D.D.C. 2016), both of which suggest that Congress's intention to make RFRA generally applicable to all components of the federal government is inconsistent with the application of *Mindes* to RFRA claims asserted against the military, as well as the Ninth Circuit's decision in *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012).

The Court disagrees and concludes that *Mindes* likely remains applicable when a RFRA claim is asserted against the military.  As an initial matter, Major Short's reliance on *Oklevueha Native American Church* is misplaced because that case stands for the uncontroversial proposition that RFRA itself doesn't contain an exhaustion requirement. 676 F.3d at 838.  The question here, which *Oklevueha Native American Church* didn't address, is whether *Mindes* should be understood as adding exhaustion and other requirements that don't appear in the statutory text.

On that issue, the rule announced by the Ninth Circuit in *Wenger* is that *Mindes* applies to any claim "challenging a military decision." 282 F.3d at 1072.  Although *Wenger* did not involve a RFRA claim, and thus the court had no reason to consider whether RFRA claims should be excepted from this rule, it is difficult to read *Wegner* as announcing anything less than a categorical rule that *Mindes* applies to all challenges to internal military decisions.  *See also Christoffersen v. Wash. State Air Nat. Guard*, 855 F.2d 1437, 1441-42 (9th Cir. 1988) (rejecting appellants' contention "that the *Mindes* test[] reflect[s] only limited reviewability of certain military decisions" and clarifying that, "[a]s modified by this Circuit, the *Mindes* test declares that . . . an internal military decision is unreviewable unless" the *Mindes* factors are satisfied).  Critically, in *Khalsa v. Weinberger*,

---

[8]      Major Short also seems to suggest that exhaustion shouldn't be required when constitutional claims are asserted against the military (Doc. 17 at 6-7), but the case Major Short cites in support of this contention, *Downen v. Warner*, 481 F.2d 642 (9th Cir. 1973), was decided years before the Ninth Circuit formally adopted the *Mindes* test.  *Mollnow v. Carlton*, 716 F.2d 627, 629 (9th Cir. 1983) ("In *Wallace v. Chappell*, 661 F.2d 729 (9th Cir. 1981), we adopted the so-called *Mindes* test for determining the reviewability of military decisions.").

779 F.2d 1393 (9th Cir. 1985), the Ninth Circuit held—in the course of rejecting the argument that *Mindes* should be deemed inapplicable to claims brought under the Administrative Procedure Act—that "the *Mindes* test also applies to statutory claims against the military." *Id.* at 1401. This passage would seem to foreclose any suggestion that RFRA (*i.e.,* statutory) claims are exempt from *Mindes* simply because the underlying statutory scheme does not impose the same exhaustion and other requirements as *Mindes*. Although the Fifth Circuit and other courts outside the Ninth Circuit may take a different approach, this Court is required to follow Ninth Circuit law.

2. <u>*Mindes*—Threshold Requirements</u>

As noted, the two threshold elements under *Mindes* are that (1) the plaintiff has alleged a violation of a recognized constitutional right, a federal statute, or military regulations; and (2) exhaustion of available intraservice remedies. *Wenger*, 282 F.3d at 1072. The first element is obviously satisfied here because Major Short has asserted a statutory claim under RFRA. As for the second element, although Major Short's request for a religious exemption was denied in October 2021 and his appeal of that decision was denied in March 2022, Major Short will have an opportunity to renew and further develop his exemption request during future separation proceedings. The Court is hard-pressed to say that Major Short has exhausted all of his available intraservice remedies under these circumstances.

If the exhaustion requirement has not been satisfied, Major Short could only avoid a finding of non-justiciability by establishing that this case falls within one of the "four circumstances in which exhaustion is not required: (1) if the intraservice remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised." *Wegner*, 282 F.3d at 1073.

Major Short contends that further exhaustion shouldn't be required because he has already suffered a coercion injury and "[a]ny subsequent processes available to mitigate the penalties Defendants will impose for his failure to comply with the order to violate his

- 18 -

religious beliefs cannot undo that ongoing deprivation." (Doc. 17 at 7.) The Court construes this as an argument that the first and second exceptions to the exhaustion requirement (*i.e.*, intraservice remedies are inadequate and/or would fail to prevent irreparable harm) are present here. But as discussed in Part II above, such arguments are likely foreclosed by *Doe* and *Hartikka*.

Alternatively, Major Short argues that *Mindes*'s exhaustion requirement should be deemed inapplicable because it would be futile for him to seek further relief from the USMC. (Doc. 17 at 8.) As noted, futility is the third recognized exception to the exhaustion requirement. *Wenger*, 282 F.3d at 1073.

On the issue of futility, it is notable that, although the USMC has granted seven requests for religious exemptions to date, it appears that all seven exemption recipients were already in the process of separating from the USMC at the time their requests were granted. In a related vein, there is no evidence that any of the seven exemptions were granted during the stages of the separation process that Major Short has not yet exhausted. Given this backdrop, the possibility of Major Short securing a religious exemption in the coming months, under circumstances in which no Marine has previously succeeded, seems remote (if not merely theoretical).

Additionally, Major Short presented evidence during the preliminary injunction hearing that the officials responsible for resolving any future request for a religious exemption would, at least as a practical matter, feel bound by the analysis in General Smith's March 2022 letter denying Major Short's appeal. The Court found this evidence persuasive. This dynamic adds to the seeming futility of the remaining intraservice remedies and processes available to Major Short. *Cf. Ward v. Chavez*, 678 F.3d 1042, 1045-46 (9th Cir. 2012) (futility established, even though the plaintiff had "exhausted only step one of the three-step BOP administrative remedy system," because the claim was foreclosed by an existing "official BOP policy" that would inevitably be applied during the unexhausted stages of the administrative process).

On the other side of the ledger, there are reasons to be cautious about making a

finding of futility in the unique context of COVID-19 vaccinations.  As we all know from our experiences over the last two years, this is an area of constant change.  New variants of the virus mutate and emerge.  New formulations of the vaccine are developed and approved.  New studies are published.  Thus, it seems possible that, a few months from now, the USMC might very well change course on the need for mandatory vaccination.  It also seems possible that a new vaccine might become available in the coming months that does not implicate the religious objections Major Short has raised to the currently available vaccines.  In either of those scenarios, the remaining intraservice remedies and processes available to Major Short might not be futile.

For these reasons, the Court finds the question of futility to be somewhat closer than other courts have viewed it.  *Compare U.S. Navy Seals 1-26*, 27 F.4th at 347 ("The Navy has not accommodated any religious request to abstain from any vaccination in seven years, and to date it has denied all religiously based claims for exemption from COVID-19 vaccination.  It is true that futility is not a function of the likely ultimate success of administrative exhaustion.   But evidence, recited previously and not meaningfully challenged here, suggests that the Navy has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains.  This is sufficiently probative of futility."), *with Short*, 2022 WL 1051852 at *4 ("Though the rate of success on appeal is admittedly quite low, it is not zero.  And his Appeal Denial letter was individually tailored, discussing the particular requirements and limitations of his job . . . .  Additionally, Plaintiff's evidence of futility focuses on the wrong administrative process.  The process he has left to exhaust is the separation proceeding.  He provides no evidence, other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember, such that engaging in the process would be futile."). On balance, the Court concludes that the scales tip in Major Short's favor on the issue of futility, but he has not made the sort of clear showing that is normally required of a party seeking preliminary injunctive relief—it is a fairly close call.

3.    *Mindes*—Merits

If Major Short were able to overcome *Mindes*'s threshold exhaustion requirement, he would next need to satisfy *Mindes*'s four-part merits test for justiciability, which requires consideration of: "(1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved." *Wenger*, 282 F.3d at 1072.

a.    **Nature And Strength Of Claim**

RFRA was enacted "to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). Under RFRA, the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). This analysis requires the government to consider its actions as applied "to the person" who is affected, not as applied to the public as a whole. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014).

Defendants do not dispute that the vaccination requirement substantially burdens Major Short's sincerely held religious beliefs.[9] Thus, Defendants must show that the application of the mandate to Major Short furthers a compelling interest and is the least restrictive means of furthering that compelling interest.

There is no doubt that the USMC has a compelling interest in preventing the spread of the COVID-19 virus among Marines. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ."); *Austin*, 142 U.S. at 1305 (Alito, J., dissenting) ("I agree that the Navy has a compelling interest in preventing COVID–19 infection from impairing its ability to carry out its vital responsibilities, as well as a compelling interest in minimizing

---

[9]    Although Defendants appeared to dispute this point in paragraph 5 of the March 2022 letter denying Major Short's appeal (Doc. 2-2 at 106), Defendants do not dispute this point for purposes of the preliminary injunction request.

any serious health risk to Navy personnel.").  There seems to be broad agreement on this point, even by courts that have granted requests for preliminary injunctive relief in favor of service members for other reasons.  *See, e.g., Air Force Officer*, 2022 WL 468799 at *9 ("It would be a waste of time and wrong to state that '[s]temming the spread of COVID-19' isn't a compelling interest—the Supreme Court has already decided it is.").

At bottom, then, the validity of Major Short's RFRA claim turns on whether the USMC has a compelling interest in applying the vaccine mandate to him in particular. *Hobby Lobby*, 573 U.S. at 726-27 ("RFRA . . . contemplates a more focused inquiry: It requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to . . . the particular claimant whose sincere exercise of religion is being substantially burdened.  This requires us to look beyond broadly formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants.") (cleaned up).  On this issue, Major Short advances what the Court views as three arguments.

The first concerns the concept of natural immunity.  Major Short argues that because he is young and healthy and already has antibodies arising from a previous COVID-19 infection, and because there is a "growing body of evidence showing the superiority of natural immunity to the currently available COVID-19 vaccines," the USMC lacks a compelling interest in enforcing the vaccine mandate against "an individual Marine [who] has had a prior COVID-19 infection and/or has tested positive for COVID antibodies." (Doc. 17 at 9-10 & n.5.)  During the preliminary injunction hearing, Major Short elaborated on this argument by, among other things, discussing a "scientific study done in Israel which was the largest most comprehensive study comparing natural immunity to vaccination immunity to illustrate that, in fact with natural immunity, I was not only as protected as those with vaccine induced immunity, I actually had stronger and long lasting immunity."[10]

This line of argument is unpersuasive.  The September 2021 order from General

---

[10]   During cross-examination, Major Short conceded that he has no formal medical training and does not have a degree in epidemiology or public health.

Berger specifically provides that "[a] history of COVID-19 disease and/or positive serology is not a valid exemption from COVID-19 vaccination." (Doc. 14-7 at 5.) Similarly, in the March 2022 letter denying Major Short's appeal, General Smith noted that "the CDC continues to recommend that those who have been infected with COVID-19 be vaccinated." (Doc. 2-2 at 107.) In essence, Major Short is attempting to question the scientific judgments reached by the CDC and the USMC and argue that both have misevaluated the necessity of COVID-19 vaccinations when it comes to the previously infected.

Courts have repeatedly rejected similar arguments in cases arising outside the military context. *See, e.g., Biden v. Missouri*, 142 S. Ct. 647, 653-54 (2022) (stating that HHS's vaccine mandate, which among other things "require[d] vaccination of employees with 'natural immunity' from prior COVID-19 illness," was not arbitrary and capricious and fell within the "zone of reasonableness") (citations and internal quotation marks omitted); *Florida v. Dep't of Health & Human Services*, 19 F.4th 1271, 1291 (11th Cir. 2021) ("Florida argues that it was arbitrary and capricious for the United States to impose a vaccine mandate instead of . . . exempting from vaccination individuals who have natural immunity from a previous COVID-19 infection. Florida essentially seeks to substitute its views on epidemiology for the Secretary's judgment about the best way to protect the public from infection. . . . Even if we were to agree with Florida that these other options were preferable to the vaccine mandate the Secretary imposed, this would not come close to showing that the district court erred in concluding that the Secretary's decision was not arbitrary or capricious.") (citation omitted); *Norris v. Stanley*, 2022 WL 557306, *4 (W.D. Mich. 2022) ("Although there is 'robust scientific debate' about the efficacy of natural versus vaccine immunity, Plaintiffs have failed to establish that it was irrational for MSU not to provide an exception to its vaccine mandate for individuals who have acquired natural immunity.") (citations omitted). Given the "great deference" that courts owe "to the professional judgment of military authorities concerning the relative importance of a particular military interest," *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986), it is

1    difficult to see how Major Short's challenge could avoid the same fate here.  Major Short

2    has, at best, shown that the scientific community continues to debate the efficacy of natural

3    immunity.  Although the Court "does not rely *entirely* on the USMC's judgment in a

4    conclusory fashion and still undertakes the strict scrutiny analysis, . . . along the way it

5    credits evidence-based assertions as to how best to further important military interests."

6    *Short*, 2022 WL 1051852 at *7 n.12.[11]

7            Major Short's second argument is that, because his "routine duties in his non-

8    deployable unit could be completed remotely," this shows that the USMC has "an obvious

9    lesser restrictive means of achieving its goals."  (Doc. 2-1 at 11.)  This argument is again

10   unpersuasive.  Although, as discussed above, Colonel Dudik's declaration may overstate

11   the extent to which Major Short's job responsibilities require in-person, close-quarters

12   contact with other Marines, it is clear that such contact cannot be wholly avoided for a

13   Marine in Major Short's position.  *Chappell v. Wallace*, 462 U.S. 296, 300 (1983)

14   ("Civilian courts must, at the very least, hesitate long before entertaining a suit which asks

15   the court to tamper with the established relationship between enlisted military personnel

16   and their superior officers; that relationship is at the heart of the necessarily unique

17   structure of the military establishment.").  Thus, simply allowing Major Short to telework

18   while continuing to perform his current role does not qualify as a less restrictive means of

19   achieving the USMC's goal of avoiding the spread of COVID-19.  *Hobby Lobby*, 573 U.S.

20   at 731 (proposed alternative must serve the government's compelling interest "equally

21   well"); *United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016) (proposed alternative

22   must allow "the government [to] achieve its compelling interest to the same degree").  This

23   is true even though the leadership at MCAS Yuma has allowed Major Short on a few recent

24   occasions to interact with other Marines without taking mitigation measures.  These

25   episodes do nothing to detract from the USMC's broader, compelling interest in avoiding

26   _____

27   [11]        To be clear, deference to military decisions "does not mean abdication."  *Witt v. Dep't of Air Force*, 527 F.3d 806, 821 (9th Cir. 2008) (citation omitted).  Deference means deference, and "review of military regulations challenged on First Amendment grounds is

28   far more deferential than constitutional review of similar laws or regulations designed for civilian society."  *Goldman*, 475 U.S. at 507.

the spread of COVID-19.

Major Short's third argument is that the USMC's professed inability to accommodate his request for a religious exemption is belied by the fact that the USMC has found a way to accommodate hundreds of Marines who have requested medical exemptions.  (Doc. 2-1 at 11 ["Further undercutting the Marine Corps['] compelling interest in vaccinating Thomas Short is the fact that the Marine Corps grants numerous medical exemptions."].)[12]  In response, Defendants argue most medical exemptions are only temporary, that permanent medical exemptions are only given to service members who would be medically harmed by the vaccine, and that "the inability of some members to receive the vaccine for a period of time due to contraindications or health issues *increases* the Marine Corps' compelling interest in maximizing the vaccination of other service members to prevent the spread of the disease."  (Doc. 14 at 11-12.)

This weighty issue presents a close call.  On the one hand, in many of the recent decisions granting preliminary injunctive relief, courts have identified the disparate treatment of medical and religious exemption requests as a reason why the service member's RFRA claim was likely to succeed on the merits.  *See, e.g., U.S. Navy Seals 1-26*, 27 F.4th at 348-49 ("[T]he Navy acknowledges that it has granted hundreds of medical exemptions from the COVID-19 vaccine . . . [a]nd 5,035 active component . . . sailors remained unvaccinated as of January 27, 2022.  It is therefore illogical that Plaintiffs' religious-based refusal to take a COVID-19 vaccine would 'seriously impede' military function when the Navy has over 5,000 service members still on duty who are just as unvaccinated as the Plaintiffs.") (cleaned up); *Air Force Officer*, 2022 WL 468799 at *10

---

[12]    In support of this argument, Major Short also cites a footnote in *Brown v. Entertainment Merchants Association,* 564 U.S. 786 (2011), stating that the "government does not have a compelling interest in each marginal percentage point by which its goals are advanced."  *Id.* at 803 n.9.  This argument is unavailing.  *Brown* dealt with a California law banning the sale of violent video games to children.  *Id.* at 789.  California claimed a compelling interest in protecting minors but failed to show that violent video games actually cause children to act aggressively.  *Id.* at 800.  The Supreme Court found the existing ratings system provided sufficient information for parents to decide which video games their kids could play such that California could not claim a compelling interest in "[f]illing the remaining modest gap in concerned parents' control . . . ." *Id.*  This "modest gap" is what the Court meant by "marginal percentage point" in its footnote.

("Defendants bank on the fact that because Plaintiff's leadership position demands in-person interaction with other military personnel and members of the public, they have asserted more than a broadly formulated interest.  This compelling interest as to Plaintiff, though, completely ignores that there are at least 3,300 exempt Air Force service members carrying out their respective duties similarly unvaccinated.  At bottom, Defendants simply don't explain why they have a compelling interest in *Plaintiff* being vaccinated while so many other Air Force service members are not.").  The Fifth Circuit characterized this as an issue of "underinclusiveness."  *U.S. Navy Seals 1-26*, 27 F.4th at 352 ("[The Navy] has granted temporary medical exemptions to 17 Special Warfare members, yet no reason is given for differentiating those service members from Plaintiffs.  That renders the vaccine requirements underinclusive.  And underinclusiveness is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact compelling.") (cleaned up).

On the other hand, this Court must look to Ninth Circuit law, not Fifth Circuit law, when evaluating whether the USMC's ability to accommodate requests for medical exemptions from the vaccine mandate undermines its asserted interest in enforcing the mandate as to Major Short.  And on this point, *Doe* again provides guidance.  As noted, *Doe* involved a challenge to a school district's vaccine mandate.  There, similar to here, the plaintiff sought to challenge the policy in part because it created a medical exemption but not a religious exemption.  19 F.4th at 1177-78.  The Ninth Circuit held that the student was unlikely to prevail on this challenge in part because the number of students who would seek a religious exemption was likely to be much higher than the number of students who would seek a medical exemption.  *Id.*  Given this disparity, the court held that allowing a medical exemption would "not undermine the District's interests" in protecting "health and safety" in the same way "as a religious exemption would."  *Id.* at 1178.  Put another way, the court held that "although it may be feasible for [the school district] to manage the COVID-19 risks posed by a small set of objectively defined and largely time-limited medical exemptions, it could pose a significant barrier to effective disease prevention to

1  permit a much greater number of permanent religious exemptions." *Id.* (cleaned up).

2  The Court acknowledges that *Doe* was not a RFRA case and did not address the

3  exact narrow-tailoring issue presented here.  Nevertheless, the passages of *Doe* set forth

4  above provide, at a minimum, some support for Defendants' position.  *Short*, 2022 WL

5  1051852 at *8 n.15 ("*Doe* involved the Free Exercise Clause, not RFRA.  The [court]

6  therefore engaged in this analysis not in the context of the least-restrictive means test, but

7  in determining whether the mandates were neutral rules of general applicability that did

8  not disfavor religion.  But the argument that the mandate is not the least restrictive means

9  because its exemptions are underinclusive is essentially the same as saying that the mandate

10  is not neutral, so the logic of [*Doe*] applies equally here.").

11  Given the current stage of the proceedings, it suffices to say that *Doe* creates too

12  much uncertainty to conclude that Major Short is likely to succeed on his RFRA claim

13  (assuming it is otherwise justiciable).  At most, he has established serious questions going

14  to the merits of that claim.  This, in turn, means the first *Mindes* factor is neutral or at most

15  slightly favors review.

16  b.  **Potential Injury If Review Is Refused**

17  The second *Mindes* factor is the potential injury to the plaintiff if review is denied.

18  *Wenger*, 282 F.3d at 1072.  Unlike the discussion in Part II above, which addresses whether

19  Major Short will suffer irreparable harm if forced to wait until the end of this case to obtain

20  remedies, the Court construes this factor as assessing whether Major Short will suffer

21  injury if wholly denied the opportunity to pursue a RFRA claim in federal court.  Viewed

22  in this way, the second *Mindes* factor supports review—Major Short is unlikely to obtain

23  relief through his remaining intraservice remedies, so this lawsuit may be his only

24  opportunity to obtain redress.  And if Major Short does, in fact, have a valid RFRA claim,

25  the injury he would suffer from a lack of review (and, therefore, the lack of an opportunity

26  to pursue reinstatement) would be a serious one indeed—he testified credibly at the

27  preliminary injunction hearing that he has dedicated his life and career to his military

28  service.

c.    **Military-Specific Considerations**

The third and fourth *Mindes* factors are the extent of interference with military functions and the extent to which military discretion or expertise is involved. *Wenger*, 282 F.3d at 1072.

The Central District of California recently concluded in *Short v. Berger* that "the third and fourth factors weigh strongly against judicial review" because "[f]orcing the USMC to adjust to the risks of including unvaccinated Marines in its ranks is a substantial interference. Though Plaintiff is just one person, the cumulative effect of accommodating all similar requests could require integrating over 3,000 additional unvaccinated servicemembers." 2022 WL 1051852 at *5. The court went on: "The whole point of the *Mindes* doctrine is that sometimes, when the Court does its job of applying law to facts, it wades into areas of professional military judgment. In fact, the strict scrutiny test is highly factual. Articulating compelling government interests involves plenty of factual considerations, as does assessing whether less restrictive means are available. If the Court were to say that the military does not have a compelling interest in preventing the spread of COVID-19, or that there are less restrictive ways to achieve that goal other than by requiring Plaintiff to get vaccinated, it would necessarily involve itself in 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force.' Binding precedent indicates that the Court must tread carefully where issues of military preparedness are concerned." *Id.* (citations omitted).

The Court emphatically agrees with this analysis and adopts it here.

4.    Summary As To Justiciability

*Mindes* likely applies here, it is fairly close call whether Major Short will be able to satisfy *Mindes*'s threshold requirement of exhaustion, and even if he does, the four *Mindes* merits factors paint a mixed picture: the first is neutral or at most weighs slightly in favor of review, the second favors review, and the third and fourth weigh against review. Given this backdrop, Major Short has not established a likelihood that his RFRA claim is justiciable. At most, there are serious questions as to justiciability.

B.    **Merits**

In Part III.A.3.a above, as part of the justiciability analysis, the Court evaluated the strength of Major Short's RFRA claim.   This analysis also functions as the Court's evaluation of whether Major Short has, apart from the issue of justiciability, demonstrated a likelihood of success on (or serious questions going to the merits of) his claim.   As discussed, he has at most shown serious questions.

C.    **Summary As To Likelihood Of Success**

Major Short is seeking a preliminary injunction based on a claim that may not be justiciable and is colorable but not overwhelming on the merits.   This provides another reason, separate and apart from his failure to demonstrate a likelihood of irreparable harm in the absence of preliminary injunctive relief, for denying his motion.   *Lopez,* 680 F.3d at 1072 (such a "drastic remedy . . . should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion").

IV.    Public Interest And Balance Of Equities

Major Short argues that the public interest and balance of equities favor him because he is seeking to vindicate important constitutional and religious rights, whereas an injunction will not "bring the Marine Corps to a standstill."   (Doc. 2-1 at 13).   Defendants respond that by continuing to refuse the vaccine, Major Short endangers himself and those with whom he works in close proximity.   Furthermore, Defendants argue that a preliminary injunction will erode the demands of military discipline and obedience to orders.   (Doc. 14 at 16-17).

This case presents a clash of compelling interests of the highest order—national defense, the judiciary's "reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs," *Department of Navy v. Egan*, 484 U.S. 518, 530 (1988), and the vindication of religious rights.   Given the conclusions in Parts II and III above, as well as the press of time brought about by a fast-moving and complicated preliminary injunction request requiring a quick decision, the Court finds it unnecessary to spill much ink analyzing how one might begin to weigh and balance such considerations.

The bottom line is that Major Short is not entitled to a preliminary injunction regardless of how the public interest and balance-of-equities factors are resolved.

***

Accordingly,

**IT IS ORDERED** that the motion for preliminary injunction (Doc. 2) is **denied**.

Dated this 22nd day of April, 2022.

_____
Dominic W. Lanza
United States District Judge